**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LAURA CURTIS, | ) | 3:25-CV-278 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE HOMEAIDES, LLC, | ) | |
| *Defendant*. | ) | March 30, 2026 |

**RULING AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

Plaintiff Laura Curtis brings this employment discrimination action arising under Title VII of the Civil Rights Act of 1964 ("Title VII") against her former employer, The Homeaides, LLC ("Homeaides"). Plaintiff alleges that she was terminated in retaliation for supporting her female colleague's complaints about being subjected to sexual harassment creating a hostile work environment. Defendant has moved to dismiss the complaint for failure to state a claim upon which relief may be granted; Plaintiff opposes the motion. For the reasons discussed herein, Defendant's motion is DENIED in full.

## I.    FACTUAL BACKGROUND

### A.   The Amended Complaint

Plaintiff's amended complaint, ECF No. 22, alleges the following facts, which are taken as true for the purpose of resolving Defendant's motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was employed by Homeaides as a director of sales management beginning in May of 2022. Am. Compl., ECF No. 22, ¶¶ 7–10. Plaintiff's supervisors were Bryan Dylewski[1] and

---

[1] The amended complaint spells this individual's name as both "Dylewski" and "Dyleski." *Compare, e.g.*, ECF No. 22 ¶ 49 *with id.* ¶ 50. The Court uses the former spelling.

Mark Testa, also Homeaides employees. *Id.* ¶¶ 12–17. Bonnie Tangredi, one of Plaintiff's female colleagues, was subjected to sex-based harassment at work. *Id.* ¶¶ 18–20. Specifically, in May of 2022, Testa "placed his hand near his groin area and then began to make jerking movements with his hand and wrist – simulating masturbation," which Tangredi witnessed and "was offended and disgusted by." *Id.* ¶¶ 29–31. Testa also wore his pants low, revealing his underwear. *Id.* ¶ 32. On July 18, 2022, Testa "stormed" over to Tangredi, who was having a conversation with another co-worker, and "screamed out – get to work, less gossiping and more production." *Id.* ¶¶ 36, 46. This took place at 8:15 am, before the workday started at 8:30 am. *Id.* ¶ 36. At an unspecified time, Testa yelled at Plaintiff "I am in charge of this office, in case you didn't know," and also slammed an office door in Tangredi's face, causing her to cry in the office for the first time in her thirty-five year career. *Id.* ¶¶ 37–40.

On July 18, 2022, Plaintiff spoke with Tangredi about the incidents with Testa; Tangredi told Plaintiff that "she had reported Testa's harassment (simulating masturbation) to Bryan Dylewski but that nothing had been done – no incident report, no meeting and no record." *Id.* ¶¶ 41–45. Plaintiff "agreed with Tangredi that she had been subjected to a hostile work environment on account of sex and vocalized her agreement to [D]efendant." *Id.* ¶ 28. On July 19, Dylewski called Plaintiff and alleged that Tangredi was "a difficult employee who had created an unprofessional work environment towards Testa." *Id.* ¶¶ 47–48. Dylewski reported that, when Testa had said he was single, Tangredi remarked that that a newly hired employee was also single. *Id.* ¶ 50. During the call, Dylewski "began interrogating [P]laintiff about whether or not she thought that Tangredi was a victim," but Plaintiff refused to "give the answer Dyle[w]ski wanted to hear." *Id.* ¶ 53.

The next day, a Zoom call was held between Plaintiff, Dylewski, and Tangredi.  *Id.* ¶ 54. Tangredi raised the fact that Dylewski still had not taken any action against Testa for his harassment, but Dylewski "offered no resolution" and simply asked "if they could move forward from this."  *Id.* ¶¶ 55–57.  Tangredi agreed that she'd like to move forward but "wanted an assurance that Testa would not continue to engage in abusive behavior and that such behavior would not be tolerated."  *Id.* ¶ 58.  It is not alleged that Plaintiff spoke on this call.

On July 20, a second Zoom call occurred, this time between Plaintiff, Dylewski, and Testa. *Id.* ¶ 59.  On the call, Testa "apologized several times" for his behavior.  *Id.* ¶ 60.  During the call, Dylewski discussed the fact that Tangredi had followed Testa out of a room after his verbal abuse. *Id.* ¶ 62.  Plaintiff said on the call that while she "agreed that it would have [been] better had Tangredi not followed Testa out of the room," this was "nowhere near as reprehensible as Testa's behavior of engaging in the verbal abuse, slamming the door in Tangredi's face, and simulating masturbation in the office."  *Id.* ¶ 63.

At an unspecified point, Dylewski sent Plaintiff a document which included a "statement that Tangredi had not been subjected to a hostile work environment" and asked that Plaintiff sign the document.  *Id.* ¶ 64.  Plaintiff refused to do so.  *Id.* ¶ 65.  On July 29, 2022, Dylewski terminated Plaintiff's employment, reasoning that Homeaides "needed a more experienced manager."  *Id.* ¶¶ 22–23, 67.  Plaintiff alleges this reason was pretextual because her replacement, Michelle Vitti, "had no prior management or sales experience in the field of home care or senior living," whereas Plaintiff did.  *Id.* ¶¶ 24–26.  The real reason for Plaintiff's termination, she contends, was "her active support of Tangredi's opposition to workplace sex harassment."  *Id.* ¶ 27.

B.  Procedural History

Plaintiff commenced this action on February 25, 2025.  Compl., ECF No. 1.  Defendant filed a motion to dismiss the initial complaint, ECF No. 17, and the Court granted Plaintiff an

3

extension of time to respond to Defendant's motion to dismiss, Order, ECF No. 19.  Plaintiff then filed an amended complaint within the time the Court allowed for Plaintiff to respond to Defendant's motion to dismiss.  ECF No. 22.  Defendant then filed a renewed motion to dismiss Plaintiff's amended complaint.  ECF No. 26.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*,

550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III.    DISCUSSION

Section 704(a) of Title VII makes it "unlawful . . . for an employer to discriminate against any . . . employee[] . . . because [that employee] opposed any practice" made unlawful under Title VII or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).[2] To state a retaliation claim under Title VII that can survive a motion to dismiss, the plaintiff need not plead a *prima facie* case as contemplated under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, "the plaintiff must plausibly allege that: "(1) defendant[] discriminated—or took an adverse employment action— against h[er], (2) because [s]he has opposed any unlawful employment practice." *Id.* at 90 (cleaned up).

An adverse action is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Here, Defendant does not challenge that Plaintiff suffered an adverse employment action, as she was terminated—the quintessential adverse action. ECF No. 22 ¶ 22; *Wilson v. Connecticut Dep't. of Trans.*, 706 F. Supp. 3d 327, 342 (D. Conn. 2023) (recognizing that a termination "qualifies as an adverse action sufficient to carry [a] Title VII claim").

---

[2] It is undisputed that Plaintiff did not participate in a formal proceeding of the Equal Employment Opportunity Commission, so the "participation" clause of § 704(a) is inapplicable here. *See Littlejohn v. City of New* York, 795 F. 3d 297, 316 (2d. Cir. 2015) ("§ 704(a) includes 'both an opposition clause and a participation clause'") (quoting *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012)).

As to the second element, "a plaintiff must plausibly plead a connection between the act and h[er] engagement in protected activity." *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3(a)). And unlike with discrimination claims, "the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360–62 (2013)).

The Court concludes that Plaintiff has plausibly alleged that her participation in protected activity was the but-for cause of her termination, for the purpose of assessing Defendant's motion to dismiss.

First, Plaintiff has sufficiently alleged that she opposed an unlawful practice under Title VII. Section 704(a) protects employees who oppose "any practice" made unlawful under Title VII. 42 U.S.C. § 2000e–3(a). "When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." *Crawford v. Metro. Gov't of Nashville and Davidson Cnty, Tenn.*, 555 U.S. 271, 276 (2009) (citation omitted); *see also Littlejohn*, 795 F.3d at 318 (citing *Crawford* and stating that "protected activities are not limited to complaints involving discrimination against the complainant herself, but also extend to complaints of discrimination on behalf of other employees and complaints of discriminatory practices generally"); *Benitez v. Jarvis Airfoil, Inc.*, No. 3:16-CV-793 (VLB), 2020 WL 1532306, at \*12 (D. Conn. Mar. 30, 2020) (applying *Crawford* to find that an employee who reported being racially harassed during an investigation about another employee being racially harassed engaged in "opposition" to an unlawful employment practices).

Plaintiff's amended complaint alleges that when she was asked about the appropriateness of Tangredi's behavior on a July 20, 2022, Zoom call with Dylewksi and Testa, she stated that

while "it would have been better" if Tangredi had not followed Testa out of the room, Tangredi's conduct was "nowhere near as reprehensible as Testa's behavior of engaging in the verbal abuse, slamming the door in Tangredi's face, and simulating masturbation in the office." ECF No. 22 ¶ 63. Drawing reasonable inferences in Plaintiff's favor, these words can be construed as opposing what Plaintiff and Tangredi believed was a hostile work environment. Further, Plaintiff alleges that she refused to sign a document from her supervisor that "included a statement that Tangredi had not been subjected to a hostile work environment." *Id.* ¶¶ 64–65.[3] This refusal to endorse her employer's statement that there was no hostile work environment is certainly behavior designed to "resist or . . . to contend against" discrimination. *Crawford*, 555 U.S. at 276. It is not material that Plaintiff's opposition took place in the context of responding to questions from her employer, rather than affirmatively raising the issue on her own. *Id.* at 277–78 ("nothing in the [Title VII] statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when asked a question"). Accordingly, either allegation independently—and certainly both together—is sufficient to allege that Plaintiff communicated a belief to her employer it has engaged in a form of employment discrimination. *Id.* at 276.

Additionally, Plaintiff is not required to show that Tangredi actually experienced a hostile work environment. "To prove that [s]he engaged in protected activity, the plaintiff need not establish that the conduct [s]he opposed was in fact a violation of Title VII." *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988). Instead, she

---

[3] Plaintiff has also plausibly pleaded that Defendant knew of her opposition to Tangredi's allegations of sexual harassment. Plaintiff's opposition to Testa's behavior was made on a Zoom call where at least one supervisor, Dylewski, was present. ECF No. 22 ¶¶ 59, 63. Further, it was Dylewski who asked Plaintiff to sign the document asserting that Tangredi was not a victim of a hostile work environment, which she refused to do. *Id.* ¶ 64–65. There can be no doubt Defendant was aware of Plaintiff's opposition.

"must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Id.* (internal quotation marks omitted). Here, Plaintiff alleges that she took actions to oppose Testa's "simulating masturbation in the office," which led to a sex-based hostile work environment. ECF No. 22 ¶¶ 63, 67. At this stage, Plaintiff has plausibly alleged that she opposed a practice made unlawful under Title VII (creation of a hostile work environment), or at the very least that she believed, in good faith, violated the law. *See Parra v. City of White Plains*, 48 F. Supp. 3d 542, 547, 551–53 (S.D.N.Y. 2014) (finding plausible hostile work environment claim based on sexual harassment where alleged behavior included "hand gestures simulating . . . masturbation"); *see also* ECF No. 22 ¶¶ 28 ("Plaintiff agreed with Tangredi that she had been subjected to a hostile work environment on account of sex"), 64–65 (Plaintiff refusing to sign a document attesting that a hostile work environment did not exist).[4] At the motion to dismiss stage, the Court need not—and does not—decide whether Testa's behavior would be sufficient to support a hostile work environment claim at the summary judgment stage, or whether Testa's actions can be fairly imputed to his employer. Rather, the Court need only determine whether Plaintiff has plausibly alleged that she had a good faith basis for believing Tangredi had been subjected to a hostile work environment claim, and that she opposed Tangredi being treated in this manner. She has.

Finally, the Court finds that Plaintiff has plausibly alleged that her opposition to Defendant's alleged unlawful act was the but-for cause of her termination. "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was

---

[4] Plaintiff also alleges that she opposed a general "hostile work environment" related to Testa's "verbal abuse" and "slamming the door in Tangredi's face." ECF No. 22 ¶¶ 63, 67. Because Plaintiff has sufficiently alleged an independent ground for her opposition, the Court need not assess whether this reason also constitutes a sufficient ground for her opposition. The Court notes, however, that on the face of the amended complaint, there is no basis for tying Testa's verbal abuse and door slamming to a protected characteristic under Title VII.

followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (internal citation omitted); *see also Vega*, 801 F.3d at 90. Although there is no "'bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship'" between protected activity and an alleged retaliatory action, allegations that the adverse action occurred "within days" of a complaint support an indirect inference of causation. *Littlejohn*, 795 F.3d at 319 (quoting *Gorman-Bakos v. Cornell Coop. Extension of Schnectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)). And courts have found that a period of five months between the protected activity and the adverse action "is not too long to find the causal relationship." *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010).

Here, Plaintiff has alleged that she participated in a Zoom meeting on July 20, 2022, where she opposed Testa's simulated masturbation in the workplace, and that she was terminated on July 29, 2022, nine days later. ECF No. 22 ¶¶ 22, 59–63. Plaintiff has not provided an exact date when Dylewski asked her to sign a document that included a statement that Tangredi had not been subjected to a hostile work environment. But it is reasonable to infer from the sequence of the complaint's allegations that the document was sent to Plaintiff in the nine days between the Zoom call and Plaintiff's termination. Taking these facts in combination, Plaintiff has adequately pleaded a causal link between her complaint and her termination, through temporal proximity. Further, Plaintiff alleges that although she was told she was terminated because Defendant needed a more experienced manager, the person hired to replace her did not have prior management or sales experience in the field of home care or senior living, like Plaintiff did. *Id.* ¶¶ 24–25. This

allegation further supports Plaintiff's theory that retaliatory animus for her support of Tangredi, rather than the reason Defendant proffered for her termination, was behind Defendant's actions.

Accordingly, the Court finds that Plaintiff has plausibly pleaded each of the elements of her Title VII retaliation claim.

## IV.    CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is DENIED.  Defendant shall file its answer to the amended complaint by April 20, 2026.

**SO ORDERED** at Hartford, Connecticut, this 30th day of March, 2026.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE